IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| YANETH GARCIA, | ) | |
| | ) | |
| Plaintiff, | ) | 4:05 CV 3139 |
| | ) | |
| v. | ) | |
| | ) | |
| | ) | |
| MONUMENT MANAGEMENT GROUP, | ) | MEMORANDUM AND ORDER |
| L.L.C. d/b/a HOLIDAY INN EXPRESS | ) | |
| HOTEL & SUITES, | ) | |
| | ) | |
| Defendant. | ) | |

Plaintiff alleges that she was terminated in violation of the Pregnancy Discrimination Act, 42 U.S.C. § 2000e(k). She alleges she was discriminated against by reason of her gender and her pregnancy, in that non-pregnant and/or male employees who violated the defendant's "no call/no show" policy were not terminated. She bases her claims on Title VII, the Pregnancy Discrimination Act, and Neb. Rev. Stat. § 20-148.

Plaintiff has moved for partial summary judgment on the issue of liability. Defendant has opposed the motion. Both sides have filed extensive evidentiary materials, all of which I have studied. I conclude that the motion must be granted.

FACTS

Plaintiff was employed by the defendant as a housekeeper at its motel from March 10, 2004 through July 27, 2004 (Filing 46, Ex. 3). Plaintiff was pregnant during her employment with defendant. (Filing 34, Ex. 2). At all times relevant Defendant employed more than fifteen employees. Id. The plaintiff's work performance was at all times satisfactory. Id. Plaintiff received a written

warning on May 31, 2004 for failing to show up for work on May 29, 2004 and failing to call and notify defendant that she would not be at work that day.  Filing 46, Ex. 9, 12.  She was written up by Frances Gonzales, defendant's head housekeeper, for violating the defendant's "no call/no show" policy.  The written warning contains this language:  "5.  I have advised employee of the following consequences if the above standards are not met:  _X_ Termination."  Plaintiff signed the warning.  Id.  Gonzales testified in her deposition that she learned in April, 2004 from plaintiff's mother-in-law that plaintiff was pregnant.  Filing 53, Ex. 2, 26:1-25.  That is, Gonzales knew plaintiff was pregnant at the time she issued plaintiff the written warning on or about May 31, 2004.  Id. and at 46:21-47:25.

At some point between June 2, 2004 and July 25, 2004 the manager of defendant, Jennifer Heinhold, became aware that plaintiff was pregnant.  She instructed Gonzales to have plaintiff provide a note from her doctor advising defendant of "any physical limitations about which Defendant should have knowledge."  Filing 46, Ex. 9.

Plaintiff was scheduled to work on July 25, 2004, but did not come to work and did not call her supervisor to inform her that she would not be coming.  Filing 46, Ex. 9.  On or about July 26, 2004[1] plaintiff was terminated.  Filing 34, Ex. 4.  She now claims she was discriminated against on the basis of gender and pregnancy.

SUMMARY OF ARGUMENTS

In her briefs filed in support of the motion for summary judgment, plaintiff suggests several other employees who she claims

---

[1] Frances Gonzales apparently misdated the termination notice form as June 26, 2004, but the context makes it clear that it was July 26, 2004.

were similarly situated to her and should be used as comparators.
They are Anne Mousseaux, Demetrius Campbell, Ryan Bosche, Grace
Villerreal, and Joseph Gaul.[2]

    Plaintiff claims that Anne Mousseaux, who was not pregnant,
violated defendant's "no call/no show" policy on three occasions,
twice on August 7, 2003 and again on September 8, 2004, and received
only one written warning from Gonzales.   Although Gonzales
threatened her with termination, when Mousseaux violated the policy
the third time on September 8, 2004, she again received only a
warning.   Further, the September 8, 2004 warning stated that if
Mousseaux violated the policy again, she would get another warning.
She was not terminated.   Filing 53, Ex. 2, 40:4-23.

    Plaintiff also contends that Demetrius Campbell, a male working
in housekeeping, was issued written warnings for violating the "no
call/no show" policy on at least three occasions without being
fired.   Gonzales testified that she gave him a written warning after
the first three "no call/no shows" on February 20, 2004, and she
threatened to terminate him if it happened again.   Nevertheless, on
February 26, 2004 he was again not terminated, but given a written
warning instead, this time by the manager, Jennifer Heinold.   Filing
53, Ex. 2, 17:9-21:11.   In fact, he was never terminated by
defendant.   Id.

    Grace Villerreal was not pregnant when she worked for the
defendant as a housekeeper.   She received three separate written
warnings.   The first is not dated; the second and third are both
dated April 9, 2004.   On the first one dated April 9, 2004
Villerreal was warned that another infraction would result in

---

    [2] Plaintiff contends that Gaul violated defendant's
"attendance" policy by calling in five times in 2005 without being
fired; however, even assuming the "attendance policy" means the
"no call/no show" policy, I consider that time frame to be too
remote to be relevant.

3

termination.  On the next warning, dated the same day, it is noted
that she voluntarily quit.  Deposition of Jennifer Heinold, Filing
46, Exhibit 16, 51:11-25.

On July 29, 2004 Ryan Boshe, another housekeeper, received a
written warning for not showing up for work or calling on or about
July 27, 2004.  The warning states that if it happened again, he
would receive another warning.  Deposition of Jennifer Heinold,
Filing 53, Ex. 3, 42:3-44:10, Deposition Exhibit 11.

Defendant has denied that it has "no standards" for the number
of warnings an employee could receive without being terminated.
Defendant's Response to Request for Admissions, No. 16, Filing 34,
Exhibit 3.  The denial says there are standards on pages 16 and 17
of the Employee Policy Handbook.  However, those pages do not set
forth any specific number of "warnings" that would be required
before terminating an employee.  Filing 46, Exhibit 16, 37:2-12 and
Deposition Exhibit 2.  Jennifer Heinold testified in her deposition
that there was no specific limit on the number of warnings an
employee could be given before termination was required, because
"each case is different."  Heinold Deposition, Filing 53, Exhibit 3,
39:16-22.  In fact, she testified that plaintiff's situation was
different from the other employees who received warnings, because
"when she was told about the first one on My 31st, through Frances,
Frances told me that Yaneth said that something happened with her
family and if anything happened with her family then she wasn't
going to show and she didn't, that it didn't matter about her job as
long as it involved something with her family."  Id. 43:10-17.  She
acknowledged, however, that another employee did not provide, and
apparently wasn't asked to explain why he was a "no call/no show."
Id.  43:18-44:1.[3]

_____

[3] Defendant does not proffer the plaintiff's "family" comment
as a legitimate, nondiscriminatory reason for her termination, and
did not argue it in its brief in opposition to the motion.  I
therefore consider such a claim abandoned.  NECivR 39.2(c).

4

Defendant argues that the persons plaintiff suggests as comparators are not appropriate comparators, because none was similarly situated to the plaintiff.  Defendant states that Anne Mousseaux was employed for two separate periods, and her first written warning[4] on the policy was during her first period of employment.  Thus, goes the argument, her second warning was really her first, because she started her second period of employment with a clean slate.  Since there was nearly a year between the end of the first period of employment and the beginning of the second, I accept the defendant's argument.  However, that does not explain why, on the written warning she received in September, 2004 it is stated that if the standard is not met, the consequence will be another written warning.

Defendant also argues that Demetrius Campbell was not terminated for violating the "no call/no show" policy, but rather, for calling in too frequently during his probationary period. Defendant states that calling in too frequently is not a violation of the "no call/no show" policy.  Affidavit of Jennifer Heinold, Filing 46, Exhibit 9.  This contradicts the testimony of Frances Gonzales, cited above, who did characterize Campbell's actions as violating the "no call/no show" policy.

Defendant's brief in opposition to the motion does not address the other three employees suggested as comparators by the plaintiff. It does, however, suggest another employee who it argues is a more comparable comparator, Guadalupe Gaytan.  She worked in the housekeeping department at approximately the same time as plaintiff; was pregnant; did not violate the "no call/no show" policy; was not terminated; continues to work for defendant; and has even been promoted.  Filing 45, p. 4; Filing 46, part 3, Exhibit 10.

---

[4] Defendant acknowledges only one written warning to Mousseaux during her first period of employment, in August, 2003.

Plaintiff counters that the supervisor of the housekeeping department, Frances Gonzales, did not learn of Gaytan's pregnancy until December, 2004, "several months after" plaintiff was fired, Filing 53, Ex. 2, 33:16-25, and well after the defendant received notice of the plaintiff's NEOC complaint in November or December, 2004.  Filing 34, part 6.  Plaintiff responds that even if Gaytan were "similarly situated," defendant's treatment of her should not be considered, because once defendant received that notice, defendant would naturally reform its behavior.

Plaintiff also claims that the defendant's practice of requiring pregnant employees, as a condition of employment, to furnish defendant with "medical releases" in the form of doctors' notes violates the PDA and discriminated against her.  Plaintiff's brief, filing 33, p.6; Defendant's response to NEOC, filing 34, Exhibit 5.  Defendant responds that its policy does not discriminate against pregnant employees, because it applies to all employees who have a physical condition or injury "that may have been exacerbated by performing the employee's normal job requirements."  Defendant's brief, filing 45, p. 6; Affidavit of Jennifer Heinold, filing 46, Exhibit 9.

There is no evidence, however, that the plaintiff was fired for refusing to comply with defendant's requests for doctor's notes.  Therefore, I do not address that claim at this time.

                              DISCUSSION

The moving party is entitled to summary judgment only if the record, viewed in a light most favorable to the non-moving party, "shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  The party moving for summary judgment has the burden of proof to show there is no genuine issue of material

fact.  See <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986);
<u>Breitkreutz v. Cambrex Charles City, Inc.</u>, 2006 WL 1312362, ____ F.
3d. ____ (8th Cir. 2006); <u>Get Away Club, Inc. v. Coleman</u>, 969 F.2d
664, 666 (8th Cir. 1992).  In reviewing a Pregnancy Discrimination
Act claim, the court applies the burden-shifting approach of
<u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973).  Plaintiff
must demonstrate a prima facie case of discrimination; defendant may
put forth a legitimate, nondiscriminatory reason for the employee's
discharge; and if so, plaintiff must produce evidence that the
employer's reason is a pretext for discrimination.  See, e.g. <u>Quick
v. Wal-Mart Stores, Inc.</u>, 441 F.3d 606, 610 (8th Cir. 2006).
Summary or conclusory statements in affidavits and depositions are
insufficient to meet plaintiff's burden.  Cf., <u>Helfter v. UPS, Inc.</u>,
115 F.3d 613, 616 (8th Cir. 1997) (conclusory statements in
affidavits and depositions, standing alone, are insufficient to
defeat *defendant's* motion for summary judgment).  Regarding the
intent issue, the Eighth Circuit recently opined:

> We have stated that summary judgment should be used
> sparingly in the context of employment discrimination
> and/or retaliation cases where direct evidence of intent
> is often difficult or impossible to obtain.  <u>Haas v. Kelly
> Services, Inc.</u>, 409 F.3d 1030, 1034-35 (8th Cir. 2005);
> see also, <u>United States Postal Serv. Bd. of Governors v.
> Aikens</u>, 460 U.S. 711, 716 (1983)("There will seldom be
> 'eyewitness' testimony as to the employer's mental
> processes.").  We have also stated, however, that no
> separate summary judgment standard exists for
> discrimination or retaliation cases and that such cases
> are not immune from summary judgment.  See <u>Berg v. Norand
> Corp.</u>, 169 F.3d 1140, 1144 (8th Cir. 1999) ("there is no
> 'discrimination case exception' to the application of
> <u>Fed.R.Civ.P.</u> 56, and it remains a useful pretrial tool to
> determine whether or not any case, including one alleging
> discrimination, merits a trial"); see also, <u>Celotex Corp.
> v. Catrett</u>, 477 U.S. 317, 327 (1986) ("Summary judgment
> procedure is properly regarded not as a disfavored
> procedural shortcut, but rather as an integral part of the
> Federal Rules as a whole, which are designed 'to secure
> the just, speedy and inexpensive determination of every
> action.'") (quoting <u>Fed.R.Civ.P.</u> 1).

Taken together, the above cases demonstrate that,
although Rule 56 contains only one standard, we must
exercise particular caution when examining the factual
question of intent to ensure that we dutifully extend all
justifiable inferences in favor of the non-moving party.
See <u>Gill v. Reorganized Sch. Dist. R-6</u>, 32 F.3d 376, 378
(8th Cir. 1994) (stating that we review summary judgment
"with caution in employment discrimination cases ...
because intent is inevitably the central issue").  Where
reasonable fact finders could extend an inference in favor
of the non-moving party without resorting to speculation,
we may not declare the inference unjustifiable simply
because we might draw a different inference.  See
<u>Wabun-Inini v. Sessions</u>, 900 F.2d 1234, 1238 (8th Cir.
1990) ("We recognize that summary judgment is a drastic
remedy and must be exercised with extreme care to prevent
taking genuine issues of fact away from juries.").
Viewing the evidence as a whole, and in this deferential
light, we must deny summary judgment where a reasonable
jury could find in favor of the non-moving party.

<u>Wallace v. DTG Operations, Inc.</u>, 442 F.3d 1112, 1117-1118 (8th Cir.
2006). (Reversing district court's grant of defendant's motion for
summary judgment, based on possible inferences a jury could draw
from defendant's timing of termination; shifting justifications for
the termination; and fact that plaintiff was the only person of her
grade to be terminated).

Congress amended Title VII to prohibit discrimination based on
pregnancy after the Supreme Court in <u>General Electric Co. v.
Gilbert</u>, 429 U.S. 125, 145-46 (1976), held that pregnancy
discrimination was not based on gender.  The amended statute
provides:

The terms "because of sex" or "on the basis of
sex" include, but are not limited to, because of
or on the basis of pregnancy, childbirth, or
related medical conditions; and women affected
by pregnancy, childbirth, or related medical
conditions shall be treated the same for all
employment-related purposes, including receipt
of benefits under fringe benefit programs, as
other persons not so affected but similar in

8

> their ability or inability to work, and nothing
> in section 2000e-2(h) of this title shall be
> interpreted to permit otherwise....

42 U.S.C. § 2000e(k).

<u>Piantanida v. Wyman Center, Inc.</u>, 116 F.3d 340, 341-342 (8th Cir. 1997).

In this case it is clear that plaintiff has demonstrated a prima facie case.  She was in a protected class, pregnant; she suffered an adverse employment action, termination; she was terminated in circumstances giving rise to an inference of discrimination, to wit:  other similarly situated employees who were not in the protected class, i.e., non-pregnant employees who violated the "no call/no show" policy, were not terminated.

Although defendant challenges the applicability of two of plaintiff's suggested comparators, it does not challenge the others. I conclude that plaintiff's suggested comparators Anne Mousseaux, Demetrius Campbell, Grace Villerreal, and Ryan Bosche are appropriately considered, because all were either given or told they would be given at least "one more chance" if they violated the "no call/no show" policy a second or subsequent time.  Plaintiff was not accorded that leeway.

Defendant's suggestion of Guadalupe Gaytan as a comparator, is inapposite.  She was not similarly situated to the plaintiff, because she did not violate the "no call/no show" policy.  Thus, defendant never had occasion to apply the policy, either favorably or unfavorably, to her violation.

Defendant has proffered only one explanation for the plaintiff's termination, that plaintiff did violate the "no call/no show" policy.  That explanation, however, only begs the question at hand.  It is undisputed that the attendance policy was discre-

9

tionary; absent discriminatory application, the defendant could apply it any way it chose.  The issue, therefore, is not whether the employer *could* exercise its discretion to fire employees who violated the "no call/no show" policy, but rather, *why* the employer *did* exercise its discretion to fire *plaintiff* and not other similarly situated but non-pregnant employees who did the same thing.  Defendant has proffered no non-discriminatory reason for doing so.

   Applying the McDonnell-Douglas burden-shifting process, defendant has failed in its burden to proffer a legitimate, non-discriminatory reason for plaintiff's termination.  Plaintiff is therefore entitled to judgment on liability as a matter of law.

   IT THEREFORE HEREBY IS ORDERED:  Plaintiff's motion for partial summary judgment on liability, filing 32, is granted.

   DATED May 19, 2006

                    BY THE COURT:

                    s/ David L. Piester
                    United States Magistrate Judge